**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

FREDDIE LEWIS STRENGTH,

Debtor

Case No. 16-30173-WRS
Chapter 7

USAMERIBANK,

Plaintiff

Adv. Pro. No. 16-3022-WRS

v.

FREDDIE LEWIS STRENGTH,

Defendant

## <u>MEMORANDUM DECISION</u>

This case came before the Court for trial on July 25, 2016. Plaintiff USAmeriBank seeks a determination that a debt owed by Defendant Freddie Lewis Strength ("Strength") is non-dischargeable because it arose out of fraud. Strength did not answer, USAmeriBank moved for default judgment, and the Clerk entered default. After reviewing the complaint the Court scheduled this trial, at which USAmeriBank appeared through counsel and Strength did not appear. For the reasons set forth below, USAmeriBank's motion for default judgment is DENIED, and the Court enters JUDGMENT FOR THE DEFENDANT.

## I. FACTS & PROCEDURAL HISTORY

On September 18, 2009, Strength signed a commercial promissory note in favor of USAmeriBank[1] in the amount of $24,416.00 in return for an unsecured loan ("the Loan"). (Ex.

---

[1] The Plaintiff was then known as Aliant Bank. For clarity, the Court will refer to the Plaintiff as USAmeriBank throughout this opinion.

A). Strength submitted two financial statements, one dated May 21, 2008, and one dated May 22, 2009, that were both two pages long. (Ex. B and C). On both financial statements, Strength asserted on the first page that he owned $1 million worth of unencumbered real estate. The statements refer the loan applicant to a "Schedule C" on the second page, which requires the loan applicant to itemize and describe any real estate the applicant owns. Schedule C was left blank on both of the financial statements Strength submitted to USAmeriBank. Cynthia Joiner ("Joiner"), vice president of USAmeriBank's collections department, testified that USAmeriBank made the Loan on the basis of the financial statements Strength provided it. Joiner admitted that USAmeriBank did not follow up on Strength's failure to include an itemization of his property in Schedule C.

Strength subsequently defaulted on the commercial promissory note. When USAmeriBank attempted to collect the debt, it learned that Strength did not have $1 million worth of unencumbered real estate. According to Joiner, Strength now owes $43,562.33 on the note, based on interest accrual and collection costs. (Ex. D and E).

Strength filed Chapter 7 bankruptcy on January 22, 2016. (Case No. 16-30173). Joiner testified that at his meeting of creditors, Strength testified that he never owned the $1 million in unencumbered real estate that he claimed he owned on the financial statements he submitted to USAmeriBank. This adversary proceeding followed.

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This is a final order.

USAmeriBank asserts that the debt is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B). Section 523(a)(2)(A) provides that a debt for money is non-dischargeable to the extent that was obtained through "false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's . . . financial condition*[.]" 11 U.S.C. § 523(a)(2)(A) (emphasis added). By its express terms a § 523(a)(2)(A) claim cannot be based on a false financial statement, and USAmeriBank offered no evidence that Strength made any other kind of misrepresentation. For USAmeriBank to prevail, it must proceed under the more rigorous standard of § 523(a)(2)(B).

Under § 523(a)(2)(B), a debt is non-dischargeable to the extent money is obtained by the "use of a statement in writing –

> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive[.]"

11 U.S.C. § 523(a)(2)(B). "In other words, a debt is non-dischargeable when it 'follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.'" Kern v. Taylor (In re Taylor),

551 B.R. 506, 516 (Bankr. M.D. Ala. 2016) (quoting Field v. Mans, 516 U.S. 59, 66 (1995)). A creditor seeking to hold a debt non-dischargeable has the burden of proving each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991).

The evidence is clear in this case that the financial statements Strength signed were materially false regarding his assertion that he owned $1 million worth of unencumbered real estate, especially in light of his testimony at the meeting of creditors that he never owned such property, and that he made these statements with deceptive intent. USAmeriBank has met three of the elements under § 523(a)(2)(B).

That leaves reliance. "Reasonable reliance connotes the use of the standard of ordinary and average person." City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). It is a more stringent standard than the "justifiable reliance" required for § 523(a)(2)(A) claims. Hurston v. Anzo (In re Anzo), 547 B.R. 454, 467 (Bankr. N.D. Ga. 2016). "The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any 'red flags' that would have alerted an ordinary prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc); *see also* Vann, 67 F.3d at 280-81.

There are a number of problems with the reasonableness of USAmeriBank's reliance on Strength's financial statements. To begin with, Strength's bare assertion of $1 million in real estate ownership is not explained with any specificity on Schedule C of the financial statements. Joiner testified that loan applicants commonly fail to completely fill out the financial statements,

and that it is USAmeriBank's policy to accept such statements at face value unless they have had collection problems with the applicant in the past. However, USAmeriBank's standardization of that practice does not make it reasonable.

Also, none of the other information Strength listed in his statements is congruent with ownership of $1 million in unencumbered real estate. For instance, Strength listed a $14,500 automobile, a $25,000 life insurance policy, total bank accounts worth less than $3,000, and $50,000 in mortgage debt. Contrasted with Strength's real estate assertion, those aspects of the financial statements should have alerted an ordinary person that it needed to investigate Strength's real estate holdings, but there is no evidence that USAmeriBank did prior to making the Loan. Joiner testified that USAmeriBank verified Strength's statements of income with his tax returns, but they were not offered as evidence. The only evidence the Court has before it to determine the reasonableness of USAmeriBank's reliance are the financial statements.

There is also minimal evidence that USAmeriBank and Strength had prior business dealings that would foster a level of trust between them. Joiner did not offer testimony as to any prior dealings, and the May 2009 financial statement reveals only $2,900 in a USAmeriBank account and a primary mortgage securing a loan of $23,714 (presumably a different debt than the one at issue in this case).

Looking at the totality of the circumstances, an ordinary person would not have made an unsecured loan of this size on the borrower's bare assertion that he owned $1 million in unencumbered real estate. The ordinary person would have asked for more specific information and then verified that information with a title search. "A creditor cannot ignore red flags that suggest inaccuracies, and should undertake at least some minimal investigation as to the

representations contained in a financial statement with red flags." Anzo, 547 B.R. at 468; *see also* Bank of Commerce v. Smith (In re Smith), 278 B.R. 532, 539 (Bankr. N.D. Okla. 2002) (holding that a creditor's failure to "undertake even minimal investigation" of red flags in a financial statement was not reasonable). Here, USAmeriBank failed to conduct any investigation of a representation that clearly warranted scrutiny, and has not adequately explained why.

That is not to say that Strength's conduct is acceptable – quite the contrary. He clearly lied to, and intended to deceive, USAmeriBank, and he failed to defend this adversary proceeding or offer any explanation for his conduct. He certainly does not deserve to discharge this debt. But Congress requires that reliance on financial statements be reasonable, meaning that lenders cannot loan money blindly and must exercise a level of prudence. *Cf.* Field, 516 U.S. at 76-77 (suggesting that Congress may have required the higher standard in § 523(a)(2)(B) to discourage consumer finance companies from "insulating their own claims from discharge" by knowingly accepting false financial statements). USAmeriBank's reliance on Strength's financial statements was not reasonable, so the debt owed it is not protected from discharge.

## III. CONCLUSION

USAmeriBank did not reasonably rely on Freddie Lewis Strength's bare assertion in his financial statements that he owned $1 million in unencumbered real estate. Therefore,

USAmeriBank has failed to prove fraud under 11 U.S.C. § 523(a)(2)(B) and the debt owed it is dischargeable.

Done this 8th day of August, 2016.

United States Bankruptcy Judge

c: Burton W. Newsome, Attorney for Plaintiff
Freddie Lewis Strength